Image ID:
D00150078D01

## SUMMONS

Doc. No.   150078

IN THE DISTRICT COURT OF Douglas COUNTY, NEBRASKA
1701 Farnam
Omaha                    NE 68183

D3 Interiors, Inc. v. Ohio National Life Assurance

Case ID: CI 12    8154

TO:  Ohio National Life Assurance

### FILED BY

Clerk of the Douglas District Court
09/27/2012

You have been sued by the following plaintiff(s):

    D3 Interiors, Inc.

Plaintiff's Attorney:      Melany S O'Brien
Address:                   1005 South 107th Avenue,  Ste 200
                           Omaha, NE 68114

Telephone:                 (402) 390-9000

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Date:  SEPTEMBER 27, 2012    BY THE COURT:  *John M. Friend*
                                                         Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

    Ohio National Life Assurance
    c/o Steven D. Davidson, Baird Holm
    1500 Woodmen Tower, 1700 Farnam St
    Omaha, NE 68102-2068

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue,
and file with the court clerk proof of service within ten days after the signed
receipt is received or is available electronically, whichever occurs first.



EXHIBIT

_____

Filed in Douglas District Court
Case Number: D 01 CI 12 0008154
Transaction ID: 0000419172
Filing Date: 08/29/2012 10:45:44 AM C
*** FILED ***

## DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

D3 INTERIORS, INC.,
a Nebraska Corporation,

        Plaintiff,

vs.

OHIO NATIONAL LIFE ASSURANCE
CORPORATION,
an Ohio Corporation,

        Defendant.

CASE ID: _____

**COMPLAINT**

COMES NOW Plaintiff, D3 Interiors, Inc. ("D3"), and for its cause of action against the Defendant Ohio National Life Assurance Corporation ("Ohio National") states and alleges as follows:

1.     Plaintiff is a Nebraska corporation with its headquarters located at 3918 N. 138th Street, Omaha, Nebraska. Lisa McCoid is the President of D3.

2.     Defendant is believed to be an Ohio corporation with its headquarters located in Cincinnati, Ohio, and is authorized to do business in Nebraska.

3.     On or about December 1, 1995, Charlotte Dann ("Dann") as President of the Interior Design Firm, Inc., applied to Defendant Ohio National for a "Buy Sell Disability" policy of insurance. The application stated that the buy-sell benefits under the policy were payable to the Interior Design Firm, Inc. While the application form had a section for including financial information about the Interior Design Firm, including information for determining how the buy-sell benefit was to be valued, the application contained no information on valuation of the buy-sell benefit.

4.     On or about February 16, 1996, Ohio National issued policy number H6170829, ("the policy") providing for disability buy-sell benefits. The policy identified Dann as the

insured, and the Interior Design Firm as owner of the policy. A copy of that policy marked Exhibit A is attached to this Complaint and made a part hereof.

5.     Notwithstanding various policy provisions requiring the insured or the owner of the policy to execute a written buy-sell agreement as defined in the policy, neither Dann nor the Interior Design Firm at any time executed a buy-sell agreement that complied with the policy definition.

6.     Beginning in 1996 and continuing through 2008, Dann and/or the Interior Design Firm paid annual premiums to Ohio National to renew the policy each 12 month period during those years.

7.     The policy expressly provides for the method of renewal of the policy by the insured or owner of the policy. Specifically, the policy states that as a condition of coverage and renewal rights, each year that the policy is renewed a buy-sell agreement must have been in effect within one year of the original policy date, and such buy-sell agreement must have been certified to Ohio National.  The policy further states that Ohio National may treat the policy as "if it had never been issued" if a buy-sell agreement has not been properly executed and certified to Ohio National.

8.     Neither Dann nor the Interior Design Firm executed a written buy-sell agreement as defined in the policy, and did not certify such an agreement to Ohio National at any of the times the policy was renewed.

9.     Ohio National accepted renewal premiums from Dann or the Interior Design Firm for the years 1996 through 2008.  At none of the renewal times did Ohio National demand from Dann or the Interior Design Firm a certified buy-sell agreement. Moreover, Ohio National did

not at any of the renewal dates exercise its right, if such right existed, to treat the policy as never having been issued because of the absence of a certified buy-sell agreement.

10.     The policy permits the insured or owner to transfer the policy to a new owner.

11.     On or about February 7, 2008 the Interior Design Firm, Inc. submitted a request to Ohio National to change the owner of the policy from the Interior Design Firm to D3 Interiors. This request was submitted on a transfer of ownership form provided by Ohio National, and recorded by Ohio National on April 3, 2008.

12.     At no time following receipt of the transfer of ownership request did Ohio National request Dann or D3 Interiors to furnish evidence of a buy-sell agreement between Dann and D3 Interiors. Moreover, Ohio National accepted renewal premiums from D3 Interiors in 2008, 2009, and 2010, without receipt of a certified copy of a buy-sell agreement between Dann and D3 Interiors.

13.     Ohio National accepted the transfer of coverage request on or after April 3, 2008, and such request became binding on Ohio National as provided in the "Ownership" paragraph of the policy.

14.     Between April 3, 2008 and May 1, 2011, Dann was a shareholder in D3 Interiors and President of the company. As President of the company she entered into various debt obligations on behalf of D3 Interiors, such obligations totaling approximately $213,000.00. Dann individually guaranteed D3 Interiors' debts, and pledged her personal real estate as security collateral for the payment of D3 Interiors' debts.

15.     On or before February 10, 2010 Dann became disabled, and filed a claim for coverage under the Buy Sell on behalf of herself and D3 Interiors.

16.     Ohio National denied coverage under the policy.

17.     Ohio National stated as its reasons for denial of coverage that (1) no buy-sell agreement as defined under the policy was in effect between Dann and D3 Interiors, (2) that a proper transfer of coverage under the policy had not occurred, and (3) D3 Interiors did not pay Dann a purchase price for surrender of her shares in D3 Interiors.

18.     By its conduct from 1996 to 2011, Ohio National has waived exact or literal compliance with the buy-sell agreement provisions of the policy, inasmuch as it continued to accept premiums from the Interior Design Firm and D3 Interiors for the entire period from 1996 to 2011.

19.     By its conduct on and after April 3, 2008, including acceptance of renewal premiums from D3 Interiors in 2008, 2009, 2010, and 2011, Ohio National agreed to the transfer of coverage from the Interior Design Firm to D3 Interiors, as provided in the policy.

20.     On or before January 1, 2011 the two remaining shareholders of D3 Interiors agreed to purchase Dann's shares in D3 Interiors by refinancing the debts set forth in paragraph 14 above, and obtained releases from the creditors holding the original debt of Dann's personal liability for such debt, and Dann's real estate collateral pledged as security for such original debt.

21.     The amount of debt refinanced, and from which Dann received release from her personal liability and pledged real estate security, totaled in excess of $174,000.00. As a result, the actual purchase price paid to Dann for her shares in D3 Interiors was in excess of $174,000.00.

22.     Under the benefits provision of the policy, D3 Interiors is entitled to the lesser of the Maximum Aggregate Benefit amount, $175,020.00, or the actual purchase price, here in excess of $174,000.00.

23.    Ohio National has continued to deny payment of the benefit owed D3 Interiors, notwithstanding compliance by D3 Interiors with policy claims provisions.

WHEREFORE, D3 Interiors respectfully requests the Court enter judgment ordering Ohio National to pay D3 Interiors the sum of $175,020.00, plus interest, and reasonable attorney fees under Neb. Rev. Stat. § 44-359.

August _29_, 2012

D3 INTERIORS, INC., Plaintiff

By: _Melany O'Brien_
Melany S. O'Brien, #20044
Terry Anderson, #10102
HAUPTMAN, O'BRIEN, WOLF & LATHROP, P.C.
1005 S 107th Ave Ste 200
Omaha, NE 68114
(402) 390-9000
ATTORNEYS FOR PLAINTIFF

# Ohio National
# Life Assurance Corporation



Ohio National
Financial Services.
1909 *100 Years* 2009
*Life changes. We'll be there.*

We will pay benefits on receipt at our home office of due proof that the Insured is Totally Disabled. Benefits are paid subject to the terms of this policy. Exclusions and Limitations are shown on page 9. Coverage starts at 12:01 a.m. on the Policy Date. Coverage stops at 11:59 p.m. on the day it ends.

Our home office is at One Financial Way, Cincinnati, Ohio 45242.

*Secretary*          *President*

**20 Day Right To Examine The Policy:** You have the right to cancel this policy within 20 days after you receive it. You may return it to us or to our Agent for any reason within those 20 days. The policy will then be treated as if it had never been issued. We will then refund the premiums that were paid to us.

**Renewal Conditions.** This policy may be continued until the earliest of:

   (1) The Insured's 65th birthday;

   (2) The date the Insured terminates Active Full-Time Work with the Business Entity for any reason other than Total Disability;

   (3) The date the Buy Sell Agreement is ended;

   (4) The date the Buy Sell Benefit is paid;

   (5) The date one person owns more than 90% of the Business Entity.

This policy terminates on the earliest of the above dates. We will refund up to 12 months' premium paid for a period beyond the end date that occurs due to Numbers 2, 3 or 4 above.

As long as the premium is paid on time, we cannot change this policy or its premium rate.

A Buy Sell Agreement must be in effect within one year from the Policy Date and before Total Disability begins. You must certify this to us. If the Buy Sell Agreement is not in effect within this time, we will treat the policy as if it had never been issued. We will then refund the premiums that were paid to us.

Benefits are reduced after the Insured is age 60. As shown on page 3, benefits of this policy will be reduced depending upon the age at which the Insured becomes Totally Disabled.

### Disability Buy-Sell Policy
*Nonparticipating*
*Renewable To Age 65*
*Renewable at Stated Conditions, Premiums are Guaranteed*
*Premiums Waived for Total Disability*

| | | | |
|---|---|---|---|
| **Insured** | CHARLOTTE L DANN | **Policy Number** | H6170829 |
| **Issue Age** | 47 | **Issue Date** | 02/16/1996 |
| **Policy Date** | 12/16/1996 | | |

FORM 93-DB-12

PAGE 1



EXHIBIT
A

# Policy Contents



| | Page | | | Page |
|---|---|---|---|---|
| **Policy Specifications** | 3 | **Exclusions** | | 9 |
| **Definitions** | 5 | War | | 9 |
| Active Full-Time Work | 5 | Incarceration | | 9 |
| Age | 5 | **Limitations** | | 9 |
| Business Entity | 5 | Pre-existing Conditions | | 9 |
| Buy Sell | 5 | Time Limit On Certain Defenses | | 9 |
| Buy Sell Agreement | 5 | **Claims** | | 9 |
| Buy Sell Benefit | 5 | Notice of Claim | | 9 |
| Policy Years | 5 | Claim Forms | | 9 |
| Insured | 6 | Proof of Loss | | 9 |
| Loss Payee | 6 | Physical Examination | | 10 |
| Owner | 6 | **Payment Of Claims** | | 10 |
| Lump Sum | 6 | Payee | | 10 |
| Monthly Installment | 6 | Time of Payment | | 10 |
| Maximum Benefit Period | 6 | Legal Actions | | 10 |
| Maximum Aggregate Benefit | 6 | **Premiums** | | 10 |
| Physician | 6 | Payment | | 10 |
| Pronouns | | Grace Period | | 10 |
| Injury | 6 | Overpayment | | 10 |
| Sickness | | Insured's Death | | 10 |
| Total Disability or Totally Disabled | 6 | Misstatement of Age or Sex | | 10 |
| Waiting Period | 7 | Reinstatement | | 11 |
| **Benefits** | 7 | **Ownership Rights** | | 11 |
| Eligibility for Buy Sell Benefit | 7 | Ownership | | 11 |
| Installment Payment Option | 7 | Assignment | | 11 |
| Legal/Accounting Fee Benefit | 7 | Policy | | 11 |
| **Additional Provisions** | 8 | State Law | | 11 |
| Conversion Privilege | 8 | | | |
| Transfer of Coverage | 8 | | | |
| Waiver of Premium | 8 | | | |

From:D3 Interiors          402 502 7312          03/13/2012 12:33      #581 P.004/032

## P O L I C Y   S P E C I F I C A T I O N S

00661 100084
7/26/05

**BENEFIT SPECIFICATIONS**                          **PREMIUM SPECIFICATIONS**

| ---------DESCRIPTION OF BENEFITS------- | ANNUAL PREMIUM | YEARS PAYABLE | FORM NUMBER |
|---|---|---|---|
| DISABILITY BUY-SELL WITH MONTHLY INSTALLMENT BENEFIT | $ 833.51 | 18 | 93-DB-12 |
| WAITING PERIOD        -    730 DAYS — 2yrs | | | |
| MAXIMUM BENEFIT PERIOD ON MONTHLY INSTALLMENTS - 60 MONTHS | | | |

| MAXIMUM BENEFITS FOR TOTAL DISABILITY STARTING: | LUMP SUM BENEFIT | MONTHLY INSTALLMENT BENEFIT | MAXIMUM AGGREGATE BENEFIT |
|---|---|---|---|
| ON OR AFTER AGE 60 BUT PRIOR TO AGE 61 | -0- | 2917 | 175020 |
| ON OR AFTER AGE 61 BUT PRIOR TO AGE 62 | -0- | 2333 | 140016 |
| ON OR AFTER AGE 62 BUT PRIOR TO AGE 63 | -0- | 1896 | 113763 |
| ON OR AFTER AGE 63 BUT PRIOR TO AGE 64 | -0- | 1458 | 87510 |
| ON OR AFTER AGE 64 BUT PRIOR TO AGE 65 | -0- | 729 | 43755 |
| | | 291 | 17502 |

LOSS PAYEE:  INTERIOR DESIGN FIRM INCORPORATED

| ------ADDITIONAL BENEFIT AGREEMENTS-- | ANNUAL PREMIUM | YEARS PAYABLE | FORM NUMBER |
|---|---|---|---|
| GUARANTEE OF PHYSICAL INSURABILITY OPTION | $ 43.87 | 13 | 93-DGB-1 |
| MAXIMUM INCREASE AMOUNT $ 2917 | | | |

POLICY NUMBER
H6170829

POLICY DATE
FEB 16 1996

ISSUE DATE
FEB 16 1996

INSURED
CHARLOTTE L DANN

ISSUE AGE & SEX
47 FEMALE

OWNER
INTERIOR DESIGN FIRM INCORPORATED

TOTAL PREMIUM

| ANNUAL | SEMIANNUAL | QUARTERLY | SPECIAL MONTHLY |
|---|---|---|---|
| $ 877.38 | 449.66 | 230.31 | 75.89 |

FORM 93-DB-12       OHIO NATIONAL LIFE ASSURANCE CORPORATION          PAGE 3

# Definitions

**Active Full-Time Work**

Insured is at work on behalf of the Business Entity at least 30 hours per week at the usual place of business.

**Age**

Insured's age nearest birthday as of the first day of each policy year.

**Business Entity**

The Partnership or Corporation named in the application which employs the Insured and in which the Insured has an ownership interest.

**Buy Sell**

The purchase and transfer of the Insured's entire ownership interest in the Business Entity under the terms of the Buy Sell Agreement as a result of the Insured's Total Disability.

**Buy Sell Agreement**

A written agreement between the Insured and the Business Entity or you, providing for the purchase price, Valuation Method and transfer of the Insured's entire ownership interest in the Business Entity in the event of the Insured's Total Disability.  We are not a party to this agreement.

**Buy Sell Benefit**

The benefit amount to be paid under this policy.  The maximum amount and frequency of the benefit payments are shown on page 3.  The amount of the Buy Sell Benefit will be the lowest of:

    (1)  the Maximum Aggregate Benefit;

    (2)  the value of the Insured's entire ownership interest in the Business Entity, as of the date Total Disability begins determined by using the Valuation Method chosen in the application unless a different method  has been agreed upon between you and us since the Policy Date; or

    (3)  the following percentage of the actual purchase price paid for the Insured's ownership interest on the Business Entity:

        (a)  100% if Total Disability begins before age 60;

        (b)  80% if Total Disability begins before age 61;

        (c)  65% if Total Disability begins before age 62;

        (d)  50% if Total Disability begins before age 63;

        (e)  25% if Total Disability begins before age 64;

        (f)  10% if Total Disability begins before age 65.

**Policy Years**

Policy Years are measured from the Policy Date shown on page 3.  The first day of the policy year is the Policy Date and its anniversaries.

From:D3 Interiors          402 502 7312          03/13/2012 12:34     #581 P.006/032

**Insured**

The person so named on page 3.  The Insured may not be the Owner or the Loss Payee of this policy.

**Loss Payee**

The person so named on page 3.  All Benefits due under this policy will be paid to the Loss Payee.

**Owner**

The person so named on page 3 with all policy rights.

**Lump Sum**

The Buy Sell Benefit that will be paid in one installment.

**Monthly Installment**

The monthly payment amount that will be made for the Maximum Benefit Period.

**Maximum Benefit Period**

The longest period of time that the Buy Sell Benefit will be paid for Total Disability of the Insured from the same or related cause, if a Monthly Installment method is used.

**Maximum Aggregate Benefit**

The sum of:  (1) all Monthly Installment benefits, if any, payable for the number of months listed on page 3; and (2) the Lump Sum benefit, if any, listed on page 3.

**Physician**

A person licensed by the State to practice the healing arts who acts within the scope of the license.  A Physician cannot be you, the Insured, the Loss Payee or an owner or employee of the Business Entity.

**Pronouns**

"Our", "us" or "we" means Ohio National Life Assurance Corporation.  "You", "your", or "yours" means the Owner.

**Injury**

Accidental injury sustained while this policy is inforce.

**Sickness**

Sickness diagnosed or treated while this policy is inforce.

**Total Disability or Totally Disabled**

The Insured is Totally Disabled or has a Total Disability if all of the following apply:  he or she:  (1) is not able to do the substantial and material duties of his or her occupation due to Injury or Sickness; (2) is under a Physician's care on a regular basis; and (3) is not doing any work for the Business Entity.  The Insured need not be under a Physician's care on a regular basis if the Insured can show to our satisfaction that further recovery is not expected.

**Waiting Period**

The period of time the Insured must be Totally Disabled before the Buy Sell Benefits are paid.  If a period of Total Disability from the same or related cause is broken by 180 days or less, all the days of the Total Disability count toward satisfying the Waiting Period.



**Benefits**

**Eligibility for Buy Sell Benefit**

We will pay the Buy Sell Benefit to the Loss Payee if all of the following occur:

    (1) the Insured suffers a Total Disability which begins during his/her Active Full-Time Work with the Business Entity;

    (2) Total Disability lasts for the entire Waiting Period; and

    (3) we receive satisfactory proof that the Buy Sell has taken place.  Proof must include:

        (a) a copy of the Buy Sell Agreement in effect when the Insured's Total Disability began;

        (b) the date of transfer of the ownership interest;

        (c) the purchase price;

        (d) the Method of Valuation of the Business Entity; and

        (e) the names of all buyers of the Insured's ownership interest.

These requirements may also be satisfied by the Owner.

Once Monthly Installment Buy Sell Benefits become payable we will continue to pay Buy Sell Benefits during the lifetime of the Insured  whether or not the Insured remains Totally Disabled.

In order to determine the Buy Sell Benefit we reserve the right to request and examine the financial records of the Business Entity and the Principals who are parties to the Buy Sell Agreement.  These records include but are not limited to, Federal Income Tax returns, Income Statements, Balance Sheets and Audit Reports.

If the Buy Sell Benefit we actually pay is less than the Maximum Aggregate Benefit shown on page 3, we will refund part of the last 12 months' premiums paid.  This refund will be the difference between: (1) the last 12 months' premium paid; and (2) the premium for the same 12 month period for the amount of Buy Sell Benefit actually paid.

Payment of the Buy Sell Benefit will be in a Lump Sum, or in Monthly Installments, or a combination of both as specified on page 3.

**Installment Payment Option**

If you so elect, the Lump Sum benefit may be paid in installments.  The election must be in writing.  The period over which the benefit is paid must be agreed to by us.  If the Installment Payment Option is elected, guaranteed interest of 3% yearly will be included.  We may also pay excess interest yearly.

**Legal/Accounting Fee Benefit**

We will pay up to $2,000 for Legal and/or Accounting fees incurred in implementing the Buy Sell Agreement as a result of Total Disability.  This benefit is not included in the Maximum Aggregate Benefit limit.  It is payable on the later of: (1) the day the Waiting Period has been satisfied; or (2) the date the Legal or Accounting fees are incurred.

## Additional Provisions

### Conversion Privilege

After this policy has been inforce for 2 years it may be exchanged for a Disability Income Policy provided that all of the following conditions are met:

    (1) this policy is terminated; either

        (a) because the Insured owns more than 90% of the Business Entity; or

        (b) because the Insured stops Active Full-Time Work in the Business Entity;

    (2) the Insured is under age 55; and

    (3) the Insured is not Totally Disabled and has not received Buy Sell Benefits under this policy.

The new policy will:

    (1) be owned by the Insured;

    (2) have a Maximum Total Disability monthly benefit of $1,000, but, not to exceed our published issue and participation limits;

    (3) have a maximum benefit period of 24 months and a waiting period of not less than 90 days; and

    (4) have the same rate class and exclusions as in this policy. The premiums will be for the Insured's attained age on the date of conversion at our rates for the policy series in effect on the date of conversion.

Evidence of the Insured's good health will not be required.

### Transfer of Coverage

After this policy has been inforce for 2 years, coverage on the same Insured can be transferred to a new Owner if all the following conditions are met:

    (1) the new Owner is not the Insured;

    (2) the Insured is under age 59;

    (3) the Insured is not Totally Disabled and has not received Buy Sell Benefits under this policy;

    (4) the Insured ends Active Full-Time Work with the Business Entity;

    (5) the Insured has begun Active Full-Time Work with another Business Entity in which he or she owns at least 10% but not more than 90% of the new Business Entity;

    (6) there must be a Buy Sell Agreement in effect on the new Business Entity within one year of the transfer;

    (7) you must meet our underwriting requirements, which apply to Buy Sell coverage; and

    (8) the transfer must occur within 90 days of termination of Active Full-Time Work with the original Business Entity.

The new policy benefit will be based on the Insured's share of the value of the new Business Entity, but not to exceed the Maximum Aggregate Benefit of the original policy. Evidence of the Insured's good health will not be required.

### Waiver of Premium

If the Insured is Totally Disabled for at least 90 days, we will waive payment of premiums which come due while he or she is Totally Disabled. Premiums due before a claim for waiver is approved must be paid within the grace period. When the claim is approved, we will refund any paid premiums which are then waived.

## Exclusions

**War**

No Buy Sell Benefit is paid if Total Disability is due to war or act or accident of war, declared or undeclared.

**Incarceration**

No Income is paid for any period you are incarcerated.

## Limitations

**Pre-existing Conditions**

We will not pay Buy Sell Benefits for a Pre-existing Condition if it was not disclosed on the application. Pre-existing Condition means a Sickness or a physical or mental condition for which prior to the Policy Date:

(1) Symptoms existed that would cause an ordinary prudent person to seek diagnosis, care or treatment; or

(2) Medical advice or treatment was recommended by or received from a Physician.

Also, we will not pay Buy Sell Benefits for any loss we have excluded by name or specific description.

**Time Limit On Certain Defenses**

After this policy has been inforce for 2 years and for 2 years after reinstatement, excluding any period during which the Insured is disabled, we can use only fraudulent misstatements in his or her application to void this policy or to deny a claim for Total Disability that starts after the end of those 2 years.

We cannot reduce or deny a claim for Total Disability that starts after 2 years from the Policy Date on the grounds that a sickness or a physical or mental condition had existed before the Policy Date, unless: (1) we have excluded it by name or specific description before the date of loss; or (2) there were fraudulent misstatements on the Insured's application.

## Claims

**Notice of Claim**

The Insured must give us written notice of a claim within 180 days after an Injury or Sickness, or as soon as he or she reasonably can. Notice must be sent to our home office or to one of our agents.

**Claim Forms**

Within 10 working days after we get notice, we will send claim forms. If we do not, the Insured can send us his or her own written proof of Total Disability. The Insured must show the kind and extent of his or her Injury or Sickness and the Total Disability that has occurred.

**Proof of Loss**

Written proof of loss must be sent to us within 90 days after the end of a period for which we are liable. If that is not reasonably possible, your claim will not be affected. But, unless you are legally incapacitated, written proof must be given within one year after the 90 days.

**Physical Examination**

When Buy Sell Benefits are payable we may require that the Insured be examined by a Physician of our choice. This will be done at our expense and at a reasonable time. If the Insured refuses, Buy Sell Benefits stop.

## Payment Of Claims

**Payee**

Buy Sell Benefits are paid to the Loss Payee.

**Time of Payment**

Buy Sell Benefits are paid at the end of the month of Total Disability for which they are due and will be paid as soon as we receive proof of loss.

**Legal Actions**

No legal action can be brought against us on this policy: (1) before 60 days have passed after we get written proof of loss; or (2) more than 3 years after proof of loss is required but not given.

## Premiums

**Payment**

Premiums are due at our home office the first day of each policy year. The amount due until Age 65 is shown on page 3. If you wish to pay more often than once a year, you may do so at our published rates.

**Grace Period**

You have 31 days of grace after the due date to pay each premium except the first. This policy stays inforce during the grace period. If the premium is not paid by the end of the grace period, this policy ends.

**Overpayment**

If we accept a premium for a period after this policy or any of its riders should end, we will refund that overpayment pro-rata.

**Insured's Death**

If the Insured dies while this policy is inforce, we will refund that part of the premium paid for any time after death. We must get written notice of death within one year.

**Misstatement of Age or Sex**

If the Insured's age or sex is misstated, Buy Sell Benefits or premiums will be changed. If the premium paid was less than should have been paid, Buy Sell Benefits will be reduced to what premiums would have bought at the right age and sex. If the premium paid was more premium than should have been paid, we will pay back the excess. From then on, premiums will be for the right age and sex. If the policy would not have taken force or if premiums are paid beyond the normal ending date, we will pay back any premium for which coverage was not available at the right age and sex.




From:D3 Interiors          402 502 7312          03/13/2012 12:36     #581 P.011/032

**Reinstatement**

If the policy ends because of failure to pay a premium, the Insured may later apply to have it put back in force up to 6 months beyond the due date. We will require proof that the Insured can be insured. The policy will not again take effect until: (1) all past due premiums are paid; and (2) we approve the request or do not disapprove it in writing within 45 days. If we accept the past due premiums and do nothing else, the policy is automatically reinstated.

Benefits will not be paid for any Total Disability due to: (1) Injury sustained before the reinstatement date; or (2) Sickness diagnosed or treated before the reinstatement date; unless (3) such Injury or Sickness was disclosed in an application which is made a part of the policy. We may add new terms to the policy when we reinstate it. Other rights under the policy will be the same as before.

## Ownership Rights

**Ownership**

All policy rights belong to you. If we agree, you may name a new Owner or contingent Owner. We must receive written notice of any change. We are not bound by a change unless: (1) we agree; or (2) all conditions of the Transfer of Coverage provision have been met. A contingent Owner becomes the Owner upon your death.

**Assignment**

This policy may not be assigned.

**Policy**

The application and timely payment of premiums are the sole consideration for this policy. The entire agreement between the parties is in this policy, its endorsements and the application, a copy of which is attached. Read the application with care. The Insured represents that the statements are true as far as he or she knows and believes. But, the Insured does not warrant the truth of statements made in good faith.

This policy cannot be changed nor our rights waived except in written form signed by one of our executive officers and attached to the policy. No agent can change this policy or waive its terms. No rider which limits coverage will take effect unless signed by you.

**State Law**

If, on the Policy Date, a term of this policy conflicts with the law of the state where the Insured lives, it is changed to comply with the law.



From:D3 Interiors          402 502 7312          03/13/2012 12:36      #581 P.012/032



From:D3 Interiors                    402 502 7312            03/13/2012 12:36    #581 P.013/032

**Rider**

## Guarantee Of Physical Insurability
### Buy-Sell

This rider is part of your policy. It is subject to the terms of the Basic Policy. If the terms of the rider and the Basic Policy differ, the rider controls.

This rider begins on the Policy Date. The Benefit and Premium Data are shown on page 3.

Rider premiums must be paid as part of the policy premium until Age 55.

**Definitions**

**Basic Policy**
   The policy to which this rider is added.

**Increased Amount**
   Means the added amount of Maximum Aggregate Benefit bought by use of this rider.

**Increase Date**
   The day an Increased Amount takes effect.

**Option Date**
   The Option Date is each second policy anniversary date to Age 55.

**Benefit**

You may buy an Increased Amount on the Option Date if you are not disabled.

The amount of each Increased Amount you may buy on each Option Date shall be no more than 20% of the original Maximum Aggregate Benefit. The sum of all such Increased Amounts may not be more than the original Maximum Aggregate Benefit.

If the Insured is Totally Disabled on any option date, the value of his or her ownership interest for purposes of the Increased Amount will be deemed to be the value of such ownership interest when he or she was first Totally Disabled. The Increased Amount will cover only Total Disability that starts after its Increase Date. If the Insured is Totally Disabled on or before the option date, he or she must have recovered for at least 6 months before a later Total Disability from the same or related cause will be covered under the Increase Amount.

**Conditions**

In order for you to buy an Increased Amount:

   (1) this rider must be inforce; and

   (2) premiums must be paid to the Increase Date.

The Insured must make written request to us for the Increased Amount. The premium for the Increased Amount must be paid by the Increase Date. The premium will be based on your age and our published rates as of the Increase Date.

---

FORM 92-DGB-1              *Ohio National Life Assurance Corporation*

From:D3 Interiors          402 502 7312          03/13/2012 12:36     #581 P.014/032

The Increased Amount must have the same Waiting Period and applicable funding method as the Basic Policy. But, the Increased Amount, when added to all other Disability Buy Sell insurance then inforce on the Insured, shall not exceed our then published issue and participation limits for such insurance.

On any option date, a change in the Waiting Period or the applicable funding method of the Basic Policy in order to buy an Increased Amount that does not exceed our issue and participation limits must be agreed to by us. Such change, including adjusted premiums will take effect for all coverage on that date.

The risk class and exclusions for the Basic Policy will also apply to the Increased Amount.

## Time Limit on Certain Defenses

The Time Limit on Certain Defenses provision in the Basic Policy applies to this rider effective beginning on the date this rider begins or is reinstated; but, with respect to each Increased Amount, this provision will apply beginning with each respective Increase Date.

## Termination

This rider ends on the first of:

    (1)  the date the Basic Policy ends; or

    (2)  the date the sum of all Increased Amounts purchased equals the original Maximum Aggregate Amount; or

    (3)  your age 55; or

    (4)  your written request to end this rider.

If a rider premium is paid for a period after this rider should end, that premium will be refunded.

### OHIO NATIONAL LIFE ASSURANCE CORPORATION



Secretary                    President

From:03 Interiors          402 502 7312          03/13/2012 12:37     #581 P.015/032

## Nebraska Endorsement

The following changes are made to this policy:

The **Incarceration** provision of the **Exclusions** section is deleted.

The first sentence of the Pre-existing Conditions provision is amended to state as follows:

Subject to the **Time Limit on Certain Defenses** provision, we will not pay Income for a Pre-existing Condition if it was misrepresented or not disclosed on the application.

**OHIO NATIONAL LIFE ASSURANCE CORPORATION** *Cincinnati*



Secretary                          President



---

FORM 93-DSE-19                    *Ohio National Life Assurance Corporation*

From: D3 Interiors              402 502 7312         03/13/2012 12:37      #581 P.016/032

Policy No. H  6170829



000681100068
7/26/05
14:50

OHIO NATIONAL LIFE ASSURANCE CORPORATION
P O BOX 237
CINCINNATI OH 45201

The undersigned hereby amends the application for HEALTH   insurance on
the life of CHARLOTTE L DANN                    dated 12/02/95
in the following particulars, with the understanding and agreement that
these amendments and declarations are to be taken and considered as part
of the said application and that the application as herein amended shall
be considered as a basis of the contract for insurance.

#1C   ISSUE AGE:  47
#16F  2.  MONTHLY INSTALLMENT $1,917

      POLICY ISSUED WITH GUARANTEE OF PHYSICAL INSURABILITY - TOTAL
      GPI BENEFIT $2,9

      PREMIUM MODE:  SPECIAL MONTHLY  (ABC)



Dated at _Omaha, NE_ this _16_ day of _February_ , 19 _92_

Agent's signature: _____      X _Charlotte L Dann_
                                           Proposed Insured:

                       Applicant if other than the proposed insured

                       Spouse if Insured Under a Spouse Rider
TO BE SIGNED AND WITNESSED, RETURN A COPY TO THE UNDERWRITING DIVISION.
IF VARIABLE ANNUITY, RETURN TO VARIABLE ANNUITY DIVISION.
IF POLICY CHANGE, RETURN TO THE CLIENT SERVICES DEPARTMENT.

Form 6472 Rev 2/90

Duplicate

From:D3 Interiors          402 502 7312          03/13/2012 12:37      #581 P.017/032

**Part 1**
☐ The OHIO NATIONAL Life Insurance Company
☐ OHIO NATIONAL Life Assurance Corporation/Cincinnati

000681 FORM  Box 237
Cincinnati, Ohio 45201

## PROPOSED INSURED

**1. PROPOSED INSURED** (Print All Answers)

a. Name (First — Middle — Last)  Charlotte L Dann

Address  3835 S 163rd Circle

City  Omaha                              State  N E    Zip  68130

County                                   How long at this residence? _____

b. Birth Date  9/3/48  c. Issue Age  57  d. State or Country of Birth  MO    e. ☐ Male  ☒ Female

f. Are you a U.S. citizen or permanent U.S. resident?  ☒ Yes  ☐ No   If "No", what country? _____

g. Social Security #  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                h. Driver License #  G01294653

## EMPLOYMENT/OCCUPATION INFORMATION
### OMIT IF PROPOSED INSURED UNDER AGE 15

**2. EMPLOYMENT/OCCUPATION**

a. Occupation/Position  Part Owner, Interior Designer/Decorator

b. Present Employer  The Interior Design Firm, Inc

Address  14933 Industrial Rd

City  Omaha                              State  NE    Zip  68144

c. Type of Business  Interior Design & Decorating

d. Length of current employment  15  ☒ Full-Time  ☐ Part-Time

e. Exact Duties  Works with Clients on decorating Residences & offices

f. Do you have any other part-time or full-time jobs, or any additional jobs or duties?  ☐ Yes  ☒ No

If "Yes", explain _____

g. Does your employer deduct FICA taxes (social security) from your wages or do you pay Social Security taxes as a self-employed person?  ☒ Yes  ☐ No.

## OWNER INFORMATION

**3. OWNER** (Indicate Life and/or Health)
Premium notice will be sent to the owner unless otherwise indicated.

a. **L   H**
☐ ☐ Proposed Insured
☐ ☒ Applicant
☐ ☐ Other (Print Below)  Relationship to Insured _____

Name:  THE Interior Design Firm

Address:  14933 Industrial Rd.

City:  Omaha    State:  NE    Zip:  68144

County:  Douglas

NOTE: If above owner dies before the insured, ownership passes to the deceased owner's estate. Fill out the contingent owner designation if such result not desired.

b. **Contingent Owner** (Print name and relationship to Proposed Insured.)

c. **Check if Applicable:**
☐ Ownership as indicated prior to insured's attaining age _____ whereupon insured shall be the Owner.
☐ At death of last surviving Owner and Contingent Owner designated above, insured shall be Owner.
Unless otherwise indicated, if two or more persons are designated in any one category, their interest shall be joint and survivor.

d. **Owner of Spouse Rider or 2nd Life Rider:**
☐ Spouse  ☐ Primary Insured  ☐ Other _____

## BENEFICIARY INFORMATION

**4. BENEFICIARY** (for life insurance and for DI apps with SVB and ROP.) Unless otherwise indicated "Children" shall mean the lawful children of the insured by birth or adoption.

a. Primary: _____
Relationship to Insured _____
(If minor, provide birthdate: ____/____/____)

b. Contingent: _____
Relationship to Insured _____
(If minor, provide birthdate: ____/____/____)

c. Beneficiary of spouse rider or 2nd Life Rider:
☐ Primary Insured  ☐ Other _____

Check if Applicable:
d. ☐ Single Sum  ☐ Proceeds at Interest  ☐ Other _____
(Signed Form 3116 attached.)

## UNISEX RATES

**5. Is this an employer sponsored plan?**  ☒ Yes  ☐ No
If "Yes", what part of the premium will be paid by your employer?  100 %
Unisex rates must be used if the employer pays any portion of the premium in an employer sponsored plan.

Form 8492 Rev. 11/92

**NOT FOR PENSION BUSINESS**
**COMPLETE FOR ALL OTHER APPLICATIONS**

Page 1

From:D3 Interiors     402 502 7312     03/13/2012 12:38     #581 P.018/032

000681 100061
7126105

## PREMIUM INFORMATION/TEMPORARY INSURANCE COVERAGE

**5.a.** Is premium submitted with application? .............................................................. ☐ Yes ☒ No

If "Yes" answer 6b for all life applications or 6b, 6c and 6d for all disability income applications.

Answer for all applications:

**b.** As to any person proposed for coverage, has a medical professional within the past two years: diagnosed or treated such person for heart attack, stroke or cancer; or advised such person to have any surgery which has not been performed?

If 5b is answered "Yes", no money may be accepted and 6a must be answered "no". .............. ☐ Yes ☒ No

Answer for DI applications only:

**c.** Is any person proposed for coverage now pregnant or now receiving disability benefits, worker's or unemployment compensation, or a pension disability benefit? ...................................... ☐ Yes ☒ No

**d.** As to any person proposed for coverage, has a medical professional within the last seven years: diagnosed, treated or advised any such person to seek treatment for drug or alcohol abuse, for emotional, neurological or mental disorder, or for arthritis or any back or neck disorder?

If either 5c or 6d is answered "Yes", no money may be accepted and 6a must be answered "no". .... ☐ Yes ☐ No

## OTHER COVERAGE/REPLACEMENT INFORMATION

**7. Do You Have Or Are You Applying For Other Life Insurance or Disability Insurance (DI)?** ☒ Yes ☐ No:

**a.** If "Yes", list below all: (1) Individual Life or DI Policies; (2) Association Life or DI coverage; (3) Group Life or DI coverage; (4) Employee Sick Pay DI Coverage; (5) Disability Overhead Expense Coverage; or (6) Disability Buy-Sell Coverage.

**b.** Will proposed policy replace or cause change in any existing policy? (For ID and SC residents include: (7) annuities) ☐ Yes ☐ No
If "Yes", indicate under "Will Coverage Be Replaced?" and complete Replacement form if required.

| Company or Source | Type (1 through 6 above) | Policy Number | Year Issued | Life Ins. Amount | Accidental Death Benefit Amount | Disability Income Monthly Benefit | Disability Income Benefit Period | Will Coverage Be Replaced? | Date of Replacement |
|---|---|---|---|---|---|---|---|---|---|
| Continental Gen'l | 1 | 208872 | '83 | 250,000 | | 0 | — | no | — |
| | | | | | | | | | |
| | | | | | | | | | |

**c.** Do you have any coverage providing benefits which may be reduced by Social Insurance benefits? ☐ Yes ☒ No

If "Yes", amount $ _____ Company _____

### (DETAILS OF "YES" ANSWERS SHOULD BE DESCRIBED BELOW).

| | Proposed Insured Yes No | | Spouse Yes No | | All Children Yes No | |
|---|---|---|---|---|---|---|
| **8. Has Any Person Proposed For Coverage** | | | | | | |
| a. ever applied for insurance or policy reinstatement which was declined, postponed, rated, ridered or modified? | | | | | | |
| b. within the last 3 years, engaged in any of the following occupational or recreational activities: flying as a pilot or crew member, sky diving, hang gliding, skin or scuba diving, or operating a motorized vehicle for competitive reasons? (If "Yes" complete form(s) 6256 and/or 6253.) | | | | | | |
| c. within the last three years, been charged with, but not acquitted of, the violation of any criminal law or fined more than $50 for violation of any traffic law? | | | | | | |
| d. any intention of traveling or residing outside the U.S. or Canada? | | | | | | |
| e. now been placed on current active status in the Armed Forces, or expect to have active status in the near future? (If "Yes" complete form 6500.) | | | | | | |
| f. within the last 10 years, had any sexually transmitted disease, disorder of the immune system, enlarged lymph glands, recurrent night sweating, white sores in or near the mouth, or fever for at least 7 straight days? | | | | | | |
| g. received disability benefits or compensation or a disability pension? | | | | | | |
| h. used barbiturates, narcotics, cocaine, marijuana, amphetamines, anabolic steroids or hallucinogens except as legally prescribed by a physician (if physician, other than yourself)? | | | | | | |
| i. been treated or advised to seek treatment for drug abuse or alcoholism? | | | | | | |

| | Proposed Insured | | Spouse | | All Children | |
|---|---|---|---|---|---|---|
| **9. Has Any Person Proposed For Coverage** | | | | | | |
| a. ever smoked cigarettes? | | | | | | |
| b. if yes, date last smoked: | (MO) | (YR) | (MO) | (YR) | | |
| c. ever used other forms of tobacco such as cigars, pipe, chewing tobacco or snuff? | | | | | | |
| d. if yes, date last used: | (MO) | (YR) | (MO) | (YR) | | |

Details: _____

Form 6492 Rev. 11/92      COMPLETE FOR ALL APPLICATIONS      Page 2

000681 100062

14:50

## COMPLETE THIS SECTION IF DISABILITY BUY-SELL APPLIED FOR

**1 6.**

   e. List names and percentage of ownership of each principal _____

## BUY-SELL FINANCIAL

b. Financial Information

  1. Total Assets             $ _____

  2. Total Liabilities         $ _____

  3. Net Worth (1-2)       $ _____

  4. Gross Annual Sales Current Fiscal Year    $ _____

  5. Net Profit After Taxes Current Fiscal Year   $ _____ Last Fiscal Year

c. Estimated Fair Market Value        $ _____

d. Describe Method Used to Value Business.

e. Will the same Method be used to Value the Buy/Sell Agreement  ☐ Yes  ☐ No
If No, what Method will be used?

## BUY-SELL BENEFITS

f.

  1. Lump Sum Benefit $ _____

  2. Monthly Installment $ _4,000_

  3. Benefit Period _5 yr_    4. Waiting Period _730_

  5. ☐ Surrender Value Benefit

  6. Owner _Interior Design Firm, Inc._   7. Loss Payee _Interior Design Firm, Inc._

**COMPLETE FOR BUY-SELL APPLICATIONS ONLY**
**DO NOT COLLECT DEPOSIT FOR BUY-SELL REQUESTS**

Form 6492 Rev. 11/92                                Page 5    DI

From:D3 Interiors     402 502 7312     03/13/2012 12:38     #581 P.020/032

*SEE MEDICAL 12-11-81*

000681100063

## MEDICAL INFORMATION
### COMPLETE WHENEVER APPLYING ON A NON-MEDICAL BASIS OR PAYOR BENEFITS APPLIED FOR — QUESTIONS 15 THROUGH 23 MUST BE ANSWERED

PROPOSED INSURED Height _____ ft. _____ in. Weight _____ lbs. Did agent measure? ☐ Yes ☐ No

Did agent weigh? ☐ Yes ☐ No If weight changed in the last year, indicate ☐ Gain _____ lbs. or ☐ Loss _____ lbs.

| PROPOSED INSURED Name and address of your personal physician? (If none, say "none".) | Date and reason last consulted? | What diagnosis was made, treatment given or medication prescribed? |
| --- | --- | --- |
| | | |

Medical Applications on Proposed Insured, Covered Family Members or Applicant.

| | Proposed Insured Yes No | Spouse or Payor Yes No | All Children Yes No |
| --- | --- | --- | --- |
| Is anyone proposed for coverage currently taking prescription medication or under treatment or observation of a medical practitioner? | | | |
| Has Anyone Proposed For Coverage Ever Had Any Of The Following: | | | |
| Chest pain, palpitation, high blood pressure, heart murmur, heart attack or other disorder of the heart, blood or blood vessels? | | | |
| Nervous disorders, convulsions, epilepsy, paralysis, dizzy spells or severe headaches? | | | |
| Shortness of breath, asthma, bronchitis, emphysema, or any other respiratory disorder? | | | |
| Anemia, ulcers or any disorder of the stomach, liver, gallbladder, pancreas, intestines or rectum, including hemorrhoids? | | | |
| Sugar, albumin or blood in the urine, stone or other disorder of the kidney, bladder, prostate, or reproductive organs? | | | |
| Cancer, tumor, cyst, goiter or diabetes? | | | |
| Gout, arthritis, or disorder of the muscles or bones, including the spine, back or joints? | | | |
| Surgery or any disorder of the skin, eyes, ears, nose, throat, sinuses, larynx, spleen or lymph glands? | | | |
| Disease or disorder of the breasts? | | | |
| Been diagnosed by a medical professional as having or treated by a medical professional for Acquired Immune Deficiency Syndrome (AIDS), or AIDS Related Complex (ARC)? | | | |
| Has anyone proposed for coverage ever had any disorder of menstruation, miscarriage or complications of pregnancy? | | | |
| To the best of your knowledge and belief are you now pregnant? | | | |
| Did a parent, brother or sister ever have diabetes? | | | |
| Has Anyone Proposed For Coverage Had Within The Past 5 Years, Other Than Noted Above: | | | |
| Checkup, consultation, illness, injury, surgery or been a patient in a hospital, clinic or sanatorium? | | | |
| EKG, x-ray or other diagnostic test or advised to have any diagnostic test, hospitalization or surgery? | | | |
| Been treated or received counseling for anxiety, depression, nervousness, stress, mental or nervous disorder or any other emotional disorder? | | | |

IF "Yes" answers, Please IDENTIFY QUESTION and PERSON. Include all diagnosis, dates, names and addresses of all medical practitioners and facilities.

### IT IS MUTUALLY AGREED THAT

statements and answers on this application are true and complete to the best of my knowledge and belief. A copy of this application is the basis of any policy issued.

... below, I acknowledge receipt of the Limited Temporary Insurance Agreement (No. TIA-9 for life insurance or No. TIA-10 ... ability Insurance) given in exchange for my payment shown ... 6 of this application; and I accept the terms and conditions ... Agreement.

... as provided in my Limited Temporary Insurance Agreement, ... cy shall be in force unless and until (a) it is delivered to ... the full first premium is paid during the lifetime of all

... persons to be insured under the policy; and (c) the statements and answers in this application remain true and complete, without material change, as of the date of policy delivery.

4. By accepting an insurance policy issued on this application, I ratify any corrections, additions or change made by Ohio National and noted under item 14. In those states where required, there can be no change of amount, age at issue, risk class, plan of insurance, or benefits, unless I agree to the change in writing.

5. No agent is authorized to make or change a contract of insurance for Ohio National, nor to extend the due date for a premium payment nor to waive any of Ohio National's rights or requirements.

*Omaha, Ne* (City)   (State)   on *12* 19 *81*   X _____
Signature of Proposed Insured

I certify that I have truly and accurately recorded on this application the information supplied by the Applicant and/or Proposed

_____
X
Signature of Spouse of Proposed Insured

_____ of Agent

X _____
Signature of Applicant if Applicant is other than Proposed Insured [or one authorized to sign for the Applicant]

Rev. 11/82

**SIGNATURE REQUIRED FOR ALL APPLICATIONS**

Page 7

From:D3 Interiors     402 502 7312     03/13/2012 12:39     #581 P.021/032

**PART 2   APPLICATION TO**  ☐ The OHIO NATIONAL Life Insurance Company
                         ☐ OHIO NATIONAL Life Assurance Corporation/Cincinnati

1. Print name of Proposed Insured
   _Chocolle    Dawn_

2. When were you last examined for insurance and for what company?
   _7 or 8 yrs ago   Continental Gen_

3. a. Name and address of your personal physician? (If none, say "none.")
   _C. Hoffman, M.D._

   b. Date and reason last consulted?
   _Physical Sept or Oct 1995_

   c. What treatment was given or medication prescribed?
   _None_

4. a. **PROPOSED INSURED'S FAMILY HISTORY**

| | LIVING | | DEAD | |
|---|---|---|---|---|
| | Age | State of Health | Age | Cause of Death |
| Father | 70+ | Good | | |
| Mother | 70+ | Good | | |
| Brothers | | | | |
| Sisters | | | | |

Did either parent, brother or sister ever have diabetes?
(If "yes," give details.)    ☒ Yes ☐ No

_Adult Onset - diet controlled_

**CIRCLE APPLICABLE ITEMS**

5. HAVE YOU EVER:                               Yes   No

   a. received disability benefits, compensation or a pension?    X
   b. had high blood pressure or treatment thereof?    X
   c. had pain or other discomfort in the chest?    X
   d. had kidney stones, sugar, albumin or blood in the urine?    X
   e. once or more than once used cocaine, marijuana, barbiturates, narcotics, amphetamines or hallucinogens except as medication prescribed by a physician?    X
   f. been treated or advised to seek treatment for drug habit or alcoholism?    X
   g. been diagnosed by a member of the medical profession as having AIDS or AIDS Related Complex (ARC)?    X
   h. been treated by a member of the medical profession for AIDS or AIDS Related Complex (ARC)?    X
   i. had enlarged lymph glands, recurrent night sweating, white sores in or near the mouth, or fever for at least seven straight days?    X

6. HAVE YOU EVER HAD ANY OF THE FOLLOWING:

   a. heart murmur, palpitation, abnormal pulse or any other heart or circulatory trouble, including varicose veins?    X
   b. nervous or mental trouble, convulsions, epilepsy, paralysis, dizzy or fainting spells, sick or severe headaches, psychological or psychiatric illness?    X
   c. asthma, bronchitis, emphysema, shortness of breath, pleurisy, tuberculosis or any other disorder of lungs?    X
   d. ulcers or any disorder of stomach, liver, gallbladder, pancreas, intestines, appendix, or rectum including hemorrhoids and hernia?    X
   e. disorder of the kidneys, bladder, prostate or genito-urinary organs?    X
   f. cancer, tumor, cyst, syphilis, goitre or diabetes?    X
   g. gout, disorder of bone, joint, back, spine, arthritis, rheumatism or any deformity?    X
   h. allergy or any disorder of the spleen or lymph glands?    X
   i. disorder of the skin, eyes, ears, nose, sinuses, throat or larynx?    X
   j. disorder or breasts or pelvic organs?    X

7. HAVE YOU WITHIN THE PAST 5 YEARS, OTHER THAN NOTED ABOVE:

   a. had a checkup, consultation, illness, injury, surgery?    X
   b. been a patient in a hospital, clinic or sanatorium?    X
   c. had an electrocardiogram, x-ray or other diagnostic tests?    X
   d. been advised to have any diagnostic test, hospitalization or surgery which was not completed?    X

8. HAVE YOU WITHIN THE PAST 12 MONTHS:

   a. smoked any cigarettes?    X
   b. used other forms of tobacco such as cigars, pipe or snuff?    X

9. ARE YOU NOW UNDER OBSERVATION OR TAKING TREATMENT?    X

10. HAS YOUR WEIGHT CHANGED MORE THAN 10 POUNDS IN THE PAST YEAR?
    If "Yes", indicate the gain or loss, cause, and how long present weight maintained.    X

11. Are you pregnant?    X

DETAILS OF "Yes" answers. IDENTIFY QUESTION NUMBER (Include diagnoses, dates, duration, names and addresses of all attending physicians and medical facilities.)

I represent that the above statements and answers were made by me or correctly recorded for me and are true and complete to the best of my knowledge and belief.

Dated at _Omaha NE_ , on _12-1_ , 19 _95_
     (City)      (State)

Witnessed by _Kinard M Wenecker RN_
          (Paramedical Technician)

Signature of Proposed Insured _____

Form 8433 Rev. 8/87

Signature of Parent or Guardian if Proposed Insured is a minor

From: D3 Interiors                402 502 7312           03/13/2012 12:39    #581 P.022/032

000581 100069
7/26/05
14:50

☐ The OHIO NATIONAL Life Insurance Company
☐ OHIO NATIONAL Life Assurance Corporation/Cincinnati

# POLICY DELIVERY RECEIPT

Insured   *CHARLOTTE I. DARN*

Owner   *THE DESIGN FIRM, INC*

Policy No.   *H6170829*

**THANKS!** . . . for purchasing your policy from Ohio National. We want to serve you in the best way we can.

**PLEASE** take the time to review your policy carefully, including the copy of your application at the back of the policy. If you have any questions, call your agent or call us direct at 1-800-366-6654.

**NOTICE** that you have a limited number of days to return the policy for a full premium refund if you choose not to keep it. See the cover page of the policy for details.

**PLEASE** sign and return this form to acknowledge that you have received your policy.

Date Policy Received   *2/16/96*

Signed (Policyowner)   *X Charlotte I. Darn*

Signed (Agent)

Return To:   New Business Services Department
Ohio National Life, 237 William Howard Taft Road,
Box 237, Cincinnati, Ohio 45201

Form 8708 Rev. 7/94        White – Home Office Copy, Yellow – Agent Copy, Pink – Policyholder Copy



From:D3 Interiors                    402 502 7312              03/13/2012 12:40        #581 P.023/032
02/13/2008   14:02    513 794 4705
FEB-13-2008 14:04 FROM:CUSTOMER SERVICE              513 794 4705
From:D3 Ineriors                                                    TO:513 794 4730              P.1/4
                                    402+502+7312              02/12/2008 18:22        #481 P.003/004
FEB/08/2008/FRI 06:13 AM                                                              P. 004

## SERVICE RETURN

Doc. No.    150078

Douglas District Court
1701 Farnam
Omaha               NE 68183

To:
Case ID: CI 12    8154 D3 Interiors, Inc. v. Ohio National Life

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____ ☐ Agent ☐ Addressee<br>B. Received by (Printed Name)    C. Date of Delivery<br>D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br>SEP 2 8 2012 |
| 1. Article Addressed to:<br>Steven Davidson, Esq.<br>Baird Holm, LLP<br>1500 Woodman Tower<br>1700 Farnam Str.<br>Omaha, NE 68102 | 3. Service Type<br>☑ Certified Mail  ☐ Express Mail<br>☐ Registered  ☑ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee)  ☐ Yes |
| 2. Article Number (Transfer from service label) | 7011 0470 0001 2764 5955 |

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

### CERTIFIED MAIL
### PROOF OF SERVICE

Copies of the Summons were mailed by certified mail
TO THE PARTY: Ohio National Life Assurance

At the following address: Steven Davidson, Baird Holms, LLP
1500 Woodman Tower, 1700 Farnam Str.
Omaha, NE 68107

on the 20th day of September, 2012, as required by Nebraska state law.

_____ Melany O'Brien

Postage $ 7.20    Attorney for: Plaintiff

The return receipt for mailing to the party was signed on Sept 28, 2012

To: Ohio National Life Assurance
c/o Steven D. Davidson, Baird Holm
1500 Woodmen Tower, 1700 Farnam St
Omaha, NE 68102-2068

From: Melany S O'Brien
1005 South 107th Avenue,  Ste 200
Omaha, NE 68114

## ATTACH RETURN RECEIPT & RETURN TO COURT